IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JACK KUHN, JR.,

          Plaintiff,

v.                                                       CIVIL ACTION NO.  3:19-0619

REAGENT CHEMICAL &
RESEARCH, INC.,

          Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Reagent Chemical & Research, Inc.'s Motion for Summary Judgment. ECF No. 29. On June 14, 2021, the Court held a pretrial conference, and the parties argued the motion. At the hearing, the Court denied Defendant's Motion. This memorandum opinion follows.

**A.  BACKGROUND**

Plaintiff Jack Kuhn began working for Defendant Reagent Chemical & Research, Inc. ("Reagent") in 1977. Def.'s Mem. of Law 2, ECF No 30; Pl.'s Resp. 1, ECF No. 35. He started work in their New Jersey facility and was later moved to Reagent's West Virginia location. Def.'s Mem. of Law 2; Pl.'s Resp. 1. In 2018, Reagent shut down a rail maintenance facility. Bendig Dep. 14, ECF No. 35-3. As a result of that shut down, Reagent's Senior Vice President Steve Bendig and Director of Eastern Operations David Matuszkiewicz undertook an evaluation Reagent's staffing needs. *Id.*

On April 26, 2019, Bendig sent an email to Rob Lippert, Reagent's Executive Vice President, recommending the termination of Kuhn. The email reads as follows:

> I had a chance to review the Institute staffing issues with David Matuszkiewicz in person earlier this week. The closure of the rail maintenance activity at this location resulted in an overstaffed situation. We reviewed all operations personnel for their skill levels and job responsibilities. We also considered the hours of coverage required to operate the facility and the tasks required to maintain and operate safely and efficiently. We determined that one general labor position could be eliminated. We considered all non-supervisory employees as potential candidates for the reduction in force (RIF) except [C.M.],[1] because of his unique skill set in rubber lining. The attached file is a listing of those Institute employees and their skill sets.
>
> We based the RIF recommendation on the needs of the facility, the skills of the individuals, and prospective 2020 retirement schedule.
>
> We recommend attaining the RIF by accelerating the retirement of Jack Kuhn. In recognition of his long tenured service to Reagent, we see the potential to approach Mr. Kuhn with the option to take retirement on his terms sometime between June 1st and August 1st of this year. We would recommend some amount of incentive money to make this option attractive to him. If he should elect not to take the opportunity to retire on his terms we would eliminate the position by June 1st. We can discuss the specifics in more detail once you have had a chance to review the concept.

Bendig Email 1, ECF No. 29-4.

The attachment to the email is titled "Institute Personnel," and it lists five employees: J.H., J.S., D.H., C.W., and Kuhn. *Id.* at 2–3. Under each employee's name, it lists his skill sets. The attachment shows that Reagent believed Kuhn possessed the same skill set as employees J.S. and C.W.:

> Load HCL on trailers
> Unload HCL railcars
> Minor maintenance tasks
> Dropping and hooking of trailers
> Plant housekeeping
> Communicates with dispatch

---

[1] The Court will refer to the employees listed in the email and its attachment by their initials.

*Id.*[2]

Reagent states that Kuhn was notified of his termination in May 2019 and was offered a severance package of $10,000. Def.'s Mem. of Law 2.[3] Kuhn was 68 years old at the time of his termination and was undisputedly the oldest of the employees who were considered for RIF. *See* Def.'s Resp. to Interrogatory 15, ECF No. 35-5.[4]

Kuhn filed suit in state court alleging that Reagent's decision to terminate him was age discrimination under the West Virginia Human Rights Act. Complaint, ECF No. 1-3. Reagent removed the action to this Court claiming diversity of citizenship. ECF No. 1.

Reagent filed this motion for summary judgment alleging that Kuhn has failed to establish a *prima facie* case of age discrimination under the West Virginia Human Rights Act. Motion, ECF No. 29; Def's Mem. of Law 3. Alternatively, Reagent argues that the evidence in this case shows that Reagent terminated Kuhn for nondiscriminatory reasons. Def.'s Mem. of Law 5–6.

### B. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

---

[2] J.H. and D.H. had additional skills listed under their names such as pipe fitting, welding, and electrical work.
[3] At the pretrial conference, counsel for Kuhn stated that Kuhn was not offered early retirement but was outright terminated.
[4] This interrogatory lists the age of Reagent's employees and shows that the other employees considered for termination were 61, 54, 38, and 45 years old. The two employees who had the same listed "skill set" as Kuhn, J.S. and C.W., were 54 and 45 years old respectively.

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### C. ANALYSIS

When West Virginia's legislature enacted the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 *et seq.* (1979), it declared that "[i]t is the public policy of the State of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property." W. Va. Code § 5-11-2. The WVHRA prohibits employment discrimination on the basis of race, religion, color, national origin, ancestry, sex, age, blindness, disability, and familial status. W. Va. Code § 5-11-9(1); W. Va. Code § 5-11-3(h).

WVHRA claims are analyzed using the Title-VII burden-shifting framework set out by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 902 (1973). *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159–60 (W. Va. 1995). Under this framework, a plaintiff asserting a claim of employment discrimination has the burden of creating "an inference of discrimination by establishing a *prima facie* case." *Barefoot*, 457 S.E.2d at 160.

A *prima facie* case is made by showing:

(1) That the plaintiff is a member of a protected class.
(2) That the employer made an adverse decision concerning the plaintiff.

>(3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986).

If a *prima facie* case is established, the burden of production then shifts to the defendant "to proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Barefoot*, 457 S.E.2d at 160. Finally, the plaintiff is given the opportunity to show that the proffered nondiscriminatory reason is pretextual. *Id.*

A reason is "pretextual" if it is "an ostensible reason or motive assigned as a color or cover for the real reason or motive." *W. Va. Institute of Tech. v. W. Va. Human Rts. Comm'n*, 383 S.E.2d 490, 496 (W. Va. 1989). "A proffered reason is a pretext if it was not 'the true reason for the decision[.]'" *Mayflower Vehicle Sys., Inc. v. Cheeks*, 629 S.E.2d 762, 773 (W. Va. 2006) (quoting *Conaway*, 358 S.E.2d at 430). A plaintiff may show that a proffered reason is pretextual through direct or circumstantial evidence, "and, where pretext is shown, discrimination may be inferred." *Id.*

A plaintiff in a WVHRA case may also prove discrimination through a different approach known as the "mixed motive analysis." "A mixed motive analysis applies where the employer articulates a legitimate nondiscriminatory reason for its decision which is not pretextual, but where the complainant demonstrates that a discriminatory motive nonetheless played a significant part in the employer's adverse decision against the complainant." *Id.* If the plaintiff is able to show that his protected status played a role in the employment decision, "the burden then shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made in the absence of the discriminatory motive." *Id.* (citing *Barefoot*, 457 S.E.2d at 162 n. 16, 164 n.18).

Both the pretext and mixed motive analyses are raised in this case, and the Court will address them separately.

### A. Plaintiff's *Prima Facie* Case of Age Discrimination

To make *prima facie* case of age discrimination under the WVHRA, Kuhn must show (1) that he is over the age of 40,[5] (2) Reagent made an adverse employment decision concerning Kuhn's employment, and (3) the adverse employment decision would not have occurred "but for" his protect status. *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 195 (W. Va. 2016).

"[T]he showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is 'de minimis.'" *Nestor v. Bruce Hardwood Floors, L.P.*, 558 S.E.2d 691, 694 (W. Va. 2001) (quoting Syl. Pt. 4, in part, *Hanlon v. Chambers*, 464 S.E.2d 741 (W. Va. 1995)).

For the purposes of this Motion, Reagent has conceded that Kuhn has established the first two elements of the *prima facie* case. Def.'s Mem. of Law 3.[6] Accordingly, only the "but for" element is at issue. While this element sounds onerous, the West Virginia Supreme Court of Appeals has explained that "the 'but for' language in that test may have been unfortunate, at least if it connotes that a plaintiff must establish anything more than an inference of discrimination to make out a *prima facie* case." *Barefoot*, 457 S.E.2d at 161. To prove the third element, the plaintiff simply must "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the

---

[5] To be part of the protected class based on age, plaintiffs must show that they are forty years old or older. *See* W. Va. Code § 5-11-3 (defining "age" under the Act as "the age of forty or above").

[6] Even if Reagent had not conceded for the purposes of this motion, it is clear that Kuhn falls within the protected class, as he was 68 at the time he was terminated. Additionally, termination is unequivocally considered an adverse employment action.

employment decision was based on an illegal discriminatory criterion." *Id.* (quoting *Conaway*, 358 S.E.2d at 429–30).

Evidence of the third element "could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decisions, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others." *Id.*

Reagent argues that "plaintiff has presented no inference whatsoever that he was terminated because of his protected status as an individual over the age of 40." Def.'s Mem. of Law 4. The Court disagrees. It is undisputed that Kuhn was the oldest employee considered for termination. *See* Bendig Email 2; Def.'s Resp. to Interrogatory 15.[7] While a plaintiff "cannot demonstrate an inference of age discrimination from the mere fact that younger workers with less seniority were retained," *Miller v. Terramite Corp.*, 114 F. App'x 536, 542 (4th Cir. 2004), Kuhn has provided the Court with more.

The email written by Reagent's Senior Vice President Steve Bendig which recommended "accelerating the retirement" of Kuhn expressly stated that the decision was motivated in part by "prospective 2020 retirement schedules." Bendig Email 1.[8] In Kuhn's succinct words, "[y]ounger people are not 'prospectively scheduled' to retire; older people do." Pl.'s Resp. 9. This email could

---

[7] As will be more thoroughly discussed below, it does not matter that 3 of the 4 retained employees were also in Kuhn's protected class. *See Knotts*, 786 S.E.2d at 199 (adopting the "substantially younger rule from *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996)).

[8] The Court finds it prudent to note that this case is distinguishable from other age discrimination cases where courts have held (1) that denial of a request for early retirement is not age discrimination, *Adams v. Dep't of Def.*, No. 116CV1468AJTTCB, 2017 WL 6699484 (E.D. Va. Sept. 29, 2017), and (2) that terminating an employee to prevent the vesting of pension benefits is not age discrimination, *see, e.g.*, *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). While these lines of cases are tangentially related because they deal with retirement as a ground for termination, neither is applicable because (1) Kuhn did not request early retirement and (2) there has been no allegation that he was terminated to prevent his retirement from vesting.

be read as an admission that Kuhn's termination was based on discriminatory criterion. As such, the Court is satisfied that Kuhn has carried the non-onerous, de minimis burden of creating an inference of discrimination.

## B. Pretext Analysis

Because Kuhn has established a *prima facie* case of age discrimination under the WVHRA, the burden shifts to Reagent "to show some nondiscriminatory reason for the decision." *Conaway*, 358 S.E.2d at 430. Courts have routinely recognized that "[t]he reason need not be a particularly good one," so long as it is unrelated to the plaintiffs protected status. *Id.*

In this case, Reagent argues that it "was forced to reevaluate its staffing needs upon the closure of its onsite rail facility and changing business needs." Def.'s Mem. of Law 5. In reevaluating its needs, it "determined that a reduction in force ('RIF') was necessary to address overstaffing and Plaintiff's position was eliminated." *Id*. Reagent argues that this RIF alone is a sufficient nondiscriminatory reason to defeat Kuhn's claim of discrimination. *Id.* The Court agrees. *See Beach v. DXC Tech. Co.*, No. 2:19-CV-00218, 2020 WL 3065308 (S.D.W. Va. June 9, 2020).

In its Reply memorandum, Reagent asserts an additional argument that Kuhn's performance at work was "subpar" and his attitude was "poor." Def.'s Reply 3–4 (citing Matuszkiewicz Depo. 27–28 (testifying Kuhn was selected for termination over other employees because of his attitude); Bendig Depo. 20–21 (testifying that he selected Kuhn for termination based on his skill set and performance). These proffered reasons are also sufficient nondiscriminatory grounds for termination. *See, e.g.*, *Strickland v. Sears, Roebuck & Co.*, 693 F. Supp. 403, 407 (E.D. Va. 1988) (finding that poor work performance was a legitimate, nondiscriminatory reason for an adverse employment action).

Finding that Reagent has submitted legitimate non-discriminatory reasons for termination, the burden shifts back to Kuhn to prove that the proffered reasons are pretextual. Under the pretext theory, Kuhn would need to show via direct or circumstantial evidence that Reagent's proffered reasons are pretextual or false. *See Mayflower Vehicle Sys.*, 629 S.E.2d at 773; *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561, 583 (W. Va. 1996) ("To get to the jury, the employee must offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact.").

Kuhn submits that he has direct and circumstantial evidence of discrimination that rebuts Reagent's proffered reasons the termination. First, Kuhn argues that the April 26 email from Bendig is direct evidence of discrimination. *See* Bendig Email 1. The email advises that Reagent only considered three factors when it selected Kuhn for RIF: (1) the needs of the facility, (2) the skill sets of the employees, and (3) prospective retirement. Bendig Email 1. As to the first factor, the email contains no other reference to the needs of the facility. Regarding the second factor, the attachment shows that it considered Kuhn to have the same skill set as two of the other employees considered for RIF. *Id.* at 2–3. Kuhn argues, therefore, that the only remaining factor was Reagent's evaluation of the "prospective 2020 retirement schedule." Pl.'s Resp. 13–14. Kuhn contends that based on a plain reading of the email, "the only difference between Kuhn and two substantially younger employees, by Reagent Chemical's own contemporaneous email, was age." *Id.*

While the email is subject to more than one interpretation, it is not difficult to read Reagent's consideration of the "prospective 2020 retirement schedule" to mean that Reagent considered which employees were closest to retirement for RIF, and therefore selected Kuhn because of his age. Though the Court is hesitant to categorize the email as a "smoking gun," it is a rare and peculiar piece of evidence in an employment discrimination case, because it documents

the decisionmaker's analysis. Reagent cannot wholly refute the allegations in the complaint by claiming it terminated Kuhn for his bad attitude or poor performance when those issues were not memorialized, and these other factors were.

As noted at the hearing, however, it is not the email alone that permits Kuhn to survive summary judgment. Although Reagent claims that Kuhn's performance was subpar, Kuhn submitted performance evaluations showing that Reagent's evaluations of Kuhn from the two years preceding his termination were substantially similar to those of his co-employee C.W., who Reagent retained. *See* Performance Evaluations, ECF No. 37. The evaluations rated different performance factors on a scale of 1 to 5. *Id.* While the C.W.'s cumulative score was marginally higher than Kuhn's in 2017, Kuhn's score was higher in 2018. *Id.* These evaluations undermine Reagent's contention that Kuhn's performance on the job was the true reason for his termination, because it retained an employee with the same skills as Kuhn, even though that employee had been given a less favorable performance evaluation.

Additionally, Reagent's interrogatory responses indicated that C.W. is 23 years younger than Kuhn. Def.'s Resp. to Interrogatory 15. While Reagent argues that this age difference is irrelevant because C.W. is over the age of 40 and therefore in the same protected class as Kuhn, the Court notes that West Virginia has adopted the "substantially younger" rule from *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308 (1996). *Knotts*, 786 S.E.2d at 199.

While the West Virginia Supreme Court has declined to adopt a firm definition of "substantially younger," it found that "'[a]ge differences of ten or more years have generally been held to be sufficiently substantial' to satisfy the 'substantially younger' rule." *Id.* at 198–99

(quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)). The 23-year age differential between Kuhn and C.W. certainly renders C.W. "substantially younger."[9]

Although Kuhn may not have been "replaced" by a younger employee, the Court believes that retention of a substantially younger employee, particularly one who had similar skills and performance reviews, is circumstantial evidence that Reagent's proffered reasons for terminating Kuhn are pretextual. *See, e.g.*, *Kanawha Valley Reg'l Transp. Auth. v. W. Va. Hum. Rts. Comm'n*, 383 S.E.2d 857, 861 (W. Va. 1989) (noting that retention of a younger employee who later took over the plaintiff's work duties may be circumstantial evidence in an age discrimination case).

Viewing all this evidence in the light most favorable to the plaintiff, a jury could conclude that Kuhn was selected for termination because of his age and not for the reasons proffered by Reagent.

## C. Mixed Motive Analysis

Additionally, the Court finds that Kuhn's claim survives summary judgment under the mixed motive analysis. Under this theory of discrimination, Kuhn need only show "that a discriminatory motive . . . played a significant part in the employer's adverse decision against the complainant." *Mayflower Vehicle Sys.*, 629 S.E.2d at 773. If Kuhn is able to establish that his protected status played a role in Reagent's decision to terminate him, the burden will then shift to Reagent to prove that the same RIF decision "would have been made in the absence of the discriminatory motive." *See id.*

Kuhn argues, under the mixed motive analysis, that email from Bendig "shows that Reagent Chemical factored age into its decision to fire Kuhn." Pl.'s Resp. 8. Specifically, Kuhn argues that reference to the "prospective 2020 retirement schedule" unequivocally indicates that

---

[9] The other retained employee who had the same listed skills set as Kuhn, J.S., was 14 years younger than Kuhn.

-11-

Reagent considered which employees were the closest to retirement for, i.e., which employees were the oldest, when selecting who would be terminated pursuant to the RIF. *Id.* at 9.

While the Court again declines to speak in absolutes, it is satisfied that reasonable a jury could view the email, as well as Kuhn's other evidence, and find that age played a substantial factor in Reagent's decision to fire Kuhn. Further, the Court believes a question of fact remains as to whether Reagent would have terminated Kuhn, even if it had not considered discriminatory factors. Accordingly, Kuhn may submit this claim to a jury.

### D. CONCLUSION

The Court **DENIES** Reagent's Motion for Summary Judgment. ECF No. 29. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 17, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE